UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
LINDA J. MINOR,                                            :
                                                           :
                          Plaintiff,                       :
                                                           :    **MEMORANDUM**
           -against-                                       :    **DECISION AND ORDER**
                                                           :
                                                           :    19-cv-2516 (BMC)
                                                           :
COMMISSIONER OF SOCIAL SECURITY,                           :
                                                           :
                                                           :
                          Defendant.                       :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks social security disability insurance benefits, alleging that she became disabled around June 2015, due to myasthenia gravis,[1] hypertension, and high cholesterol. The Administrative Law Judge disagreed and found that she was able to perform light work with restrictions and thus not disabled as defined by the Social Security Act, 42 U.S.C. § 401. Plaintiff's motion for judgment on the pleadings raises two arguments: (1) the ALJ erroneously concluded that her myasthenia gravis symptoms did not meet the requirements for a Listed impairment; and (2) the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence. Both of these arguments lack merit, and I therefore grant defendant's cross-motion for judgment on the pleadings, deny plaintiff's motion, and dismiss the action.

---

[1] Myasthenia gravis is an autoimmune neuromuscular disorder characterized by fatigue and exhaustion of muscles. Suren v. Metropolitan Life Ins. Co., No. 07-cv-4439, 2008 WL 4104461, at *3 n.7 (E.D.N.Y. Aug. 29, 2008) (citation omitted).

# DISCUSSION

**I.  Relevant Listing**

Plaintiff argues that the ALJ erred by concluding her myasthenia gravis symptoms didn't meet or medically equal one of the listed impairments found in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (the "Listing").  It is plaintiff's burden to demonstrate that her disability meets all of the specified medical criteria in the Listing.  See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

To establish disability under the listing for myasthenia gravis, listing 11.12 requires plaintiff to show either sections A, B, or C are met despite adherence to prescribed treatment for at least 3 months:

> A.  Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or the use of upper extremities; or
>
> B.  Bulbar and neuromuscular dysfunction, resulting in: one myasthenic crisis requiring mechanical ventilation; or need for supplemental enteral nutrition via a gastrostomy or parenteral nutrition via a central venous catheter; or
>
> C.  Marked limitation in physical functioning, and in one of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, maintaining pace, or adapting or managing oneself.

Plaintiff has failed to show that her symptoms met or medically equaled any section under this particular listing.  As the ALJ correctly observed, plaintiff's treatment records from June 2015 to August 2018 did not support her contention that her impairment satisfied these criteria.

Plaintiff's symptoms did not satisfy section A because her medical examinations consistently revealed normal motor functions in all four of her extremities.  On May 2015, Dr. Rudrani Banik, her treating physician, examined plaintiff, observing she was in "no pain" and his notes indicate that plaintiff did not complain of any motor function limitations.  A month later,

plaintiff again sought medical treatment, but she didn't complain of muscle weakness, fatigue, or any other physical limitation. Plaintiff was seen from February 2017 through January 2018 by Dr. Anthony Geraci, another treating physician, whose notes indicate that plaintiff's four extremities were "normal" and that she had normal grip and motor functions. There is nothing in the medical record to show plaintiff suffered from disorganization in any extremity, let alone two, or that her motor functions were "extremely" limited.

As to the other sections of the Listing, her symptoms could not satisfy section B because there was no evidence of bulbar and neuromuscular dysfunction, and she never required mechanical ventilation or enteral nutrition. Nor did her symptoms satisfy section C because there was no medical evidence showing marked limitation in physical functioning. Her physical examinations, summarized above, were consistently normal when describing her motor functions.

## II.   Substantial Evidence

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, his decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not

look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Castano v. Astrue, 650 F. Supp. 2d 270, 277 (E.D.N.Y. 2009) (citation omitted).

Here, the ALJ found that plaintiff maintained the RFC to perform light work with no kneeling, crawling, or climbing ladders, ropes, or scaffolds; no more than occasionally stooping or climbing ramps and stairs; no more than occasional operation of a motor vehicle or exposure to humidity or wetness; and no exposure to extremes of heat or cold. Contrary to plaintiff's arguments, I find that there is a substantial amount of medical and non-medical evidence to support the ALJ's RFC assessment.

First, from June 2015 through April 2016, plaintiff regularly saw Dr. Banik. Even though Dr. Banik noted that plaintiff complained about drooping eyelids in June of that year, he also concluded that she was otherwise in good health. By December 2015, she was doing "fine", her vision was stable, and she exhibited normal physical findings. Throughout 2016, Dr. Banik had to adjust plaintiff's medication frequently based on the symptoms she presented, but by October 2016, her condition was "stable". Dr. Banik's notes describe a healthy patient and omit any mention of any severe physical limitations, supporting the ALJ's finding that plaintiff could indeed perform light work with the limitations set forth above.

Second, Dr. John Fkiaras, a consulting examiner, examined plaintiff in 2016 and found no significant physical limitations. Even though plaintiff claimed a pain level of 10 out of 10 in her lower extremity, Dr. Fkiaras noted that, during his examination, she could walk on her heels and toes without difficulty; did not use an assistive device; did not need help changing for the examination; needed no help getting on or off the examination table; and that she was able to rise

from the examination chair without any difficulty. He opined that plaintiff should not engage in "great exertion" or heavy lifting and carrying. This medical evidence, describing in great detail plaintiff's physical abilities and what she could actually do, further supports the ALJ's assessment that plaintiff did not suffer from severe physical limitations preventing her from completing light work with restrictions.

Third, the examinations of Dr. Geraci from February 2017 through May 2018 support the ALJ's RFC determination. During these examinations, Dr. Geraci never opined that plaintiff suffered from any significant visual, neurological, or physical impairment. On the contrary, Dr. Geraci noted that any "subtle weakness in the arms" she had complained about earlier in February 2017 had subsided by June 2017. According to his notes, plaintiff was "doing well" and did not suffer from any severe limitations. Thus, his medical evaluations portray plaintiff's health as progressively improving. By May 2018, even though she complained of experiencing fatigue "at the end of the day making it hard for her to function," she had intact vision, normal gait, intact sensations and reflexes, and extension of her shoulders, arms, wrists, hips, knees, and ankles.

Fourth, plaintiff sought treatment in November 2017 from a physician's assistant, Christine Carbonaro, complaining of leg and knee pain and stiffness; however, plaintiff attributed these symptoms to a fall she suffered in 2013 while at work, and she reported to Carbonaro that "her pain [had] returned over the past 3 months." This supports the notion that plaintiff did not suffer from any extreme physical limitations precluding light work with restrictions.

Likewise, the non-medical evidence in the record supported the ALJ's RFC assessment. Plaintiff, who lived alone, reported that she did not have any issues with her personal care: she

prepared her own meals; went outside every day on her own without needing any help; was able to walk, ride in a car, and use public transportation; shopped at the grocery store; visited with friends and family; went to the movies or dinner a "few times a month"; regularly attended social events; tended to her garden; cleaned her own home, and did her own laundry.

Based on plaintiff's daily activities and capabilities, the ALJ could reasonably conclude that she maintained the ability to independently care after herself and rarely needed assistance from others while completing necessary tasks. If plaintiff's symptoms did not severely limit her ability to physically travel to the movie theaters or regularly go out to dinner (where she presumably had to continuously sit for a few hours), or otherwise maintain an active social life, then the ALJ could reasonably find that she maintained the capability to perform light work with restrictions.

Even though plaintiff contends the ALJ improperly discounted her sworn testimony, when faced with conflicting evidence, the ALJ was permitted to make credibility findings. See Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). At the hearing, plaintiff testified how she could not work because of her medical symptoms and how she experienced, *inter alia*, weakness in her extremities and constantly felt exhausted and fatigued. However, the medical and non-medical evidence, summarized above, undermined her testimony and thus the ALJ could discount that testimony. The medical examinations consistently revealed normal motor functions in all four of her extremities and omitted any reference to any extreme physical limitation, thereby contradicting plaintiff's self-serving and exaggerated claims. It is also difficult to reconcile plaintiff's self-assessment of her severe physical limitations with the evidence that she was able to adequately care after herself, go outside every day, and maintain an active social life.

In an attempt to undermine the ALJ's RFC assessment, plaintiff asserts the ALJ did not reconcile her decision with "each treating and examining report." But plaintiff has neither identified any particular medical provider nor cited to any medical finding in the record that she claims was improperly disregarded; as the Commissioner has argued, plaintiff's argument was simply "conclusory and non-specific [.]" Even if the ALJ didn't provide a detailed rationale for disregarding certain medical evidence, this alone would not warrant a remand. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (holding remand is unnecessary where there is no reasonable likelihood that remand will alter the ALJ's determination). This is especially the case because an ALJ need not defer to medical evidence that is contradicted by the weight of other evidence in the record. See Snell, 177 F.3d at 133.

## CONCLUSION

Plaintiff's motion for judgment on the pleading [12] is denied, and the Commissioner's cross-motion for judgment on the pleading [14] is granted. The complaint is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                           U.S.D.J.

Dated: Brooklyn, New York
       January 15, 2020